UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DENISE R. ABDALE; HELEN BUTLER; PAULETTE
SCHRAMM; CHARLEEN SOLOMON; LENA VETERE;
CHARLES BILLUPS; DIANE PETERMAN, M.D.;
KATHERINE CROSS; LINDA KIEHL; ELIZABETH
CAPORASO; RICHARD ERTL; and JARRETT
AKINS, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

                                            MEMORANDUM & ORDER

         -against-                          13-CV-1238(JS)(WDW)

NORTH SHORE-LONG ISLAND JEWISH HEALTH
SYSTEM, INC.; NORTH SHORE-LONG ISLAND
JEWISH MEDICAL CARE, PLLC; NORTH
SHORE-LIJ NETWORK, INC.; and NORTH
SHORE UNIVERSITY HOSPITAL,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Bonita E. Zelman, Esq.
                    Law Offices of Bonita E. Zelman
                    2001 Marcus Avenue, Suite S150
                    Lake Success, NY 11042

For Defendants:     Jason Brown, Esq.
                    Joseph Gaughan Cleemann, Esq.
                    Ropes & Gray LLP
                    45 Rockefeller Plaza
                    New York, NY 10111-0087

SEYBERT, District Judge:

         Plaintiffs--a group of patients who received medical

services at medical facilities owned by defendants--commenced this

putative class action by filing a Summons and Complaint in the

Supreme Court of the State of New York, Queens County.   The

Complaint seeks, inter alia, damages for defendants' "failure to

adequately protect the confidential personal and medical
information of their current and former patients, conduct that
ultimately resulted in identity and medical identity data
breaches." (Compl. ¶ 1.) Defendants removed the action to this
Court pursuant to 28 U.S.C. § 1446, claiming: (1) that federal
question jurisdiction exists, and (2) that removal is appropriate
under the Class Action Fairness Act of 2005. Presently before the
Court are (1) defendants' motion to dismiss the Complaint for
failure to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6), (Docket Entry 9); and (2) plaintiffs' motion
to remand pursuant to 28 U.S.C. § 1447(c), (Docket Entry 11). For
the following reasons, plaintiffs' motion to remand is DENIED with
leave to renew and the Court RESERVES JUDGMENT on defendants'
motion to dismiss.

<u>BACKGROUND</u>

Plaintiffs are thirteen residents of the State of New
York (collectively, "Plaintiffs"). (Compl. ¶¶ 12-23.) Defendants
are New York, not-for-profit corporations that own and operate
North Shore University Hospital in Manhasset, New York and other
medical facilities in New York City and Long Island, New York
(collectively, "Defendants"). (Compl. ¶¶ 24-33.) Plaintiffs
bring this action on behalf of themselves, and a class of those
similarly situated, to recover damages stemming from alleged
security breaches that exposed Plaintiffs' confidential personal

2

and medical information to identify thieves. The Complaint asserts eleven causes of action brought under New York state law for: (1) negligence _per se_ based on violations of New York General Business Law § 899-aa; (2) negligence _per se_ based on violations of New York Public Health Law § 18; (3) negligence _per se_ based on violations of New York General Business Law § 399-dd(4); (4) negligence _per se_ based on violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996); (5) negligence _per se_ based on violations of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), 42 U.S.C. §§ 17921-53; (6) violations of New York General Business Law § 349; (7) breach of contract; (8) breach of fiduciary duty; (9) negligence; (10) breach of the implied covenant of good faith and fair dealing; and (11) misrepresentation. (Compl. ¶¶ 161-238.)

Defendants moved to dismiss the Complaint for failure to state a claim. However, since the filing of that motion, Plaintiffs moved to remand the action to state court for lack of subject matter jurisdiction. These motions are currently pending before the Court.

DISCUSSION

Although Defendants' motion to dismiss the Complaint was filed before Plaintiffs' motion for remand, the Court first must decide the motion for remand since it raises questions of subject

matter jurisdiction.  <u>Macro v. Independent Health Ass'n, Inc.</u>, 180 F. Supp. 2d 427, 431 (W.D.N.Y. 2001) ("[W]hen an action is removed from state court, the district court first must determine whether it has subject matter jurisdiction over the claims before considering the merits of a motion to dismiss . . . .").  "If removal was inappropriate, the court must remand for lack of subject matter jurisdiction, notwithstanding the pendency of the other motions."  <u>Id.</u>

As discussed below, the Court finds that subject matter jurisdiction exists under the Class Action Fairness Act.  However, the Court also finds that Plaintiffs have presented the Court with evidence that warrants expedited discovery regarding whether an enumerated exception to jurisdiction under the Class Action Fairness Act also applies here.  The Court will first discuss the applicable legal standard for a motion to remand before turning to Plaintiffs' motion specifically.

I.   <u>Legal Standard on a Motion to Remand</u>

Under the federal removal statute, 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "On a motion to remand, the party seeking removal bears the burden of

establishing to a 'reasonable probability' that removal is proper." Anwar v. Fairfield Greenwich Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (citations omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Additionally, any doubts regarding the propriety of removal are resolved in favor of remand, and "'federal courts construe the removal statute narrowly.'" Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994) (quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991)).

II.  Federal Question

Defendants first argue that removal is proper because the Complaint raises federal issues sufficient to trigger federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Defs.' Opp. Br., Docket Entry 15, at 3-14.)  The Court disagrees.

Federal courts have federal question jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under federal law if "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 690, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation

Trust for S. Cal., 463 U.S. 1, 27–28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)).

To determine whether a state law claim "necessarily depends on resolution of a substantial question of federal law," id. at 689–90, a court must assess whether the state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314, 125 S. Ct. 2363 (2005). Under Grable, only a "special[,] small . . . [and] slim category" of cases may be removed to federal court. Empire, 547 U.S. at 699, 701. "Even if [the] state-law claims involve a federal element, the mere presence of such an element does not automatically create federal jurisdiction." Schultz v. Tribune ND, Inc., 754 F. Supp. 2d 550, 556 (E.D.N.Y. 2010) (citing Empire, 547 U.S. at 701 ("[I]t takes more than a federal element to open the arising under door." (internal quotation marks and citation omitted)); accord Ins. Corp. of N.Y. v. Monroe Bus Corp., 491 F. Supp. 2d 430, 434 (S.D.N.Y. 2007) (citing Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808, 813–14, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986)).

As noted, Plaintiffs' Complaint sets out eleven causes of action, the first five of which are labeled "Negligence Per

6

Se." (Compl. ¶¶ 161-97.) The first three causes of action allege that Defendants' conduct violated New York state laws and therefore constituted negligence per se. (Compl. ¶¶ 161-80.) Defendants argue that the fourth and fifth causes of action for negligence per se arise under federal law because they are based on alleged violations of federal statutes, i.e., HIPPA and HITECH. (Defs.' Opp. Br. at 4-9.) However, district courts in this Circuit have consistently held that federal question jurisdiction is not appropriate where "no cause of action . . . necessarily stands or falls based on a particular interpretation or application of federal law." In re The Reserve Fund Secs. & Derivative Litig., Nos. 09-CV-0782, 09-CV-3786, 2009 WL 3634085, at *4 (S.D.N.Y. Nov. 3, 2009) (quoting Sung v. Wasserstein, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006)). Thus, a complaint that alleges negligence per se based on violations of state and federal law "does not create a 'necessary' federal-law question" because the negligence per se claim "relies on alternative grounds for finding the presumption of negligence--i.e., violations of state or federal law." DeLuca v. Tonawanda Coke Corp., No. 10-CV-859S, 2011 WL 3799985, at *5 (W.D.N.Y. Aug. 26, 2011). A necessary federal question therefore is not present because "a fact finder could find negligence per se without determining whether Defendants violated federal law." Id. (citations omitted).

Here, Plaintiffs allege that Defendants were negligent per se with respect to the security of Plaintiffs' confidential information based on several alternative theories, only two of which reference violations of federal law. Thus, the Complaint's negligence per se claims do not present a necessary federal question. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 194 (2d Cir. 2005) ("Where a federal issue is present as only one of multiple theories that could support a particular claim . . . this is insufficient to create federal jurisdiction."); Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148, 154 (4th Cir. 1994) (finding that federal question jurisdiction did not exist because "negligence per se under the federal environmental statutes is only one of the Plaintiffs' numerous theories of recovery . . . ."); Abbott v. Tonawanda Coke Corp., No. 11-CV-0549, 2012 WL 42414, at *4 (W.D.N.Y. Jan. 9, 2012) ("Plaintiffs' alternative theory of negligence per se [based on violations of federal law] is not 'essential' to their negligence theory, [and as such] no federal subject matter jurisdiction exists." (internal quotation marks and citation omitted) (second alteration in original)); see also In re Reserve Fund, 2009 WL 3634085, *4 (finding that federal question jurisdiction did not exist because federal law violation was only one of several alternative theories underlying breach of contract and fiduciary duties claims). The Court is not persuaded by Defendants' argument that Plaintiffs'

fourth and fifth causes of action based on violations of federal law are not alternative theories of negligence simply because Plaintiffs broke them out and labeled them as separate causes of action. This argument elevates form over substance. The Complaint alleges that Defendants were negligent in the handling and security of Plaintiffs' confidential information. The violations of federal law are just one way Plaintiffs intend to establish their state law claim that Defendants were negligent per se.

Defendants also argue that Plaintiffs' sixth and seventh causes of action serve as bases for removal on federal question grounds. (Defs.' Opp Br. at 9-12.) However, Defendants did not assert these as grounds for removal in their notice of removal and have therefore waived them. See CBS Inc. v. Snyder, 762 F. Supp. 71, 73 (S.D.N.Y. 1991) ("A petition for removal may be amended freely within the statutory 30-day period calculated from the date of service of the initial state court pleading. Thereafter it may be amended to set forth more specifically grounds for removal which were imperfectly stated in the original petition. The prior decisions have made a distinction between an 'imperfect' or 'defective' allegation and a wholly missing allegation, which cannot be supplied by amendment after the 30-day period has run."); see also Wyant v. Nat'l R.R. Passenger Corp., 881 F. Supp. 919, 925 (S.D.N.Y. 1995) (denying motion to amend notice of removal to add new basis for removal and remanding to state court.).

Having found no basis for federal question jurisdiction, the Court will turn to Defendants' next argument that removal is appropriate pursuant to the Class Action Fairness Act.

III. Class Action Fairness Act

Enacted in 2005, the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C, including § 1332), "expanded the jurisdiction of the federal courts to allow class actions originally filed in state courts that conform to particular requirements to be removed to federal district courts." Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23, 26 (2d Cir. 2010); see also 28 U.S.C. § 1453 ("A class action may be removed to a district court of the United States in accordance with section 1446 . . . ."). Specifically, CAFA "confer[s] federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members (the 'numerosity' requirement); (2) minimal diversity exists between the parties, (i.e., where 'any member of a class of plaintiffs is a citizen of a State different from any defendant'); and (3) the aggregate amount in controversy exceeds $5,000,000." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (quoting 28 U.S.C. § 1332(d)(2)-(6)).

Defendants, as the removing party, bear the burden of establishing jurisdiction under CAFA. See Sorrentino v. ASN Roosevelt Ctr., LLC, 588 F. Supp. 2d 350, 353 (E.D.N.Y. 2008) ("The

Second Circuit has made clear that the party asserting federal jurisdiction under CAFA bears the burden of establishing jurisdiction." (citing Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57-58 (2d Cir. 2006); DiTolla v. Doral Dental IPA of N.Y., LLC, 469 F.3d 271, 275 (2d Cir. 2006); Mattera v. Clear Channel Commc'ns, Inc., 239 F.R.D. 70, 78 (S.D.N.Y. 2006))). However, the jurisdiction granted to federal courts under CAFA is not unlimited, as CAFA enumerates certain exceptions to CAFA jurisdiction. "[O]nce the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions." Greenwich, 603 F.3d at 26 (citing Brook v. UnitedHealth Grp. Inc., No. 06-CV-12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007)); see also Anwar, 676 F. Supp. 2d at 293 ("If a defendant has successfully met his burden of demonstrating the propriety of removal, a plaintiff may still prevail on a motion to remand upon a showing that one of CAFA's enumerated exceptions applies." (internal citations omitted)).

Here, Plaintiffs argue that this action must be remanded to state court because Defendants have failed to demonstrate that the three prerequisites for CAFA jurisdiction are met. (Pls.' Br., Docket Entry 12, at 2-13.) Additionally, even if Defendants had met their burden of establishing jurisdiction under CAFA, Plaintiffs contend, the Court still must remand this case pursuant

to CAFA's "local controversy," "home state," and "interests of justice" exceptions to CAFA jurisdiction. (Pls.' Br. at 13-20.) As discussed below, the Court finds that Defendants have demonstrated that the CAFA prerequisites are met. However, although Plaintiffs have not shown that one of CAFA's enumerated exceptions applies here, the Court finds that they have presented enough evidence to warrant conducting expedited discovery regarding whether this action falls within one of the exceptions.

A.   CAFA Prerequisites

1.   Jurisdictional Amount

To satisfy the jurisdictional amount requirement under CAFA, the removing defendant "must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million." Blockbuster, 472 F.3d at 58. "Facts relating to the jurisdictional amount can be challenged by the plaintiff, thereby requiring the defendant to support those facts with a 'competent proof' by a preponderance of the evidence." Sorrentino, 588 F. Supp. 2d at 354 (quoting United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301-02 (2d Cir. 1994)). To determine the amount in controversy, courts first turn to the allegations of the complaint.   Id. (citing DiTolla, 469 F.3d at 276; Kocienda v. U-Haul Int'l., Inc., No. 07-CV-0954, 2007 WL 2572269, at *1 (D. Conn. Sept. 4, 2007)).  "'Where the pleadings

themselves are inconclusive as to the amount in controversy . . . courts may look outside those pleadings to other evidence in the record.'" Smith v. Manhattan Club Timeshare Ass'n, Inc., 944 F. Supp. 2d 244, 250 (S.D.N.Y. 2013) (ellipsis in original) (quoting United Food, 30 F.3d at 305).

Here, the Complaint contains a claim for $50 million in punitive damages but does not make any other specific damages demand. Defendants argue that the punitive damages claim satisfies the amount-in-controversy requirement in and of itself. (Defs.' Opp. Br. at 16.) Plaintiffs counter, arguing that the amount-in-controversy calculation should not include amounts for punitive damages because punitive damages are precluded by Section 901(b) of the New York Civil Practice Laws and Rules. (Pls.' Br. at 3-6.) Because the amount-in-controversy is determined at the time of removal, which in turn depends on state law, Plaintiffs contend, any amounts for punitive damages cannot be included in the calculation.

Plaintiffs are correct that the amount in controversy is determined at the time of removal, which depends on state law. See DiPonzio v. Bank of Am. Corp., No. 11-CV-6192, 2011 WL 2693912, at *5 (W.D.N.Y. July 11, 2011). However, Plaintiffs are incorrect that Section 901(b) prohibits the recovery of punitive damages here. Section 901(b) prohibits the recovery of penal damages imposed by statute in a class action unless a statute specifically

authorizes the recovery of such damages in a class action. N.Y. C.P.L.R. § 901(b) ("Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery <u>created or imposed by</u> <u>statute</u> may not be maintained as a class action.") Here, however, Plaintiffs do not seek punitive damages pursuant to a statute. Rather, they seek punitive damages because Defendants "actions and omissions rose to the level of gross negligence and recklessness . . . ." (Compl. at 47.) Section 901(b) therefore has no application here and punitive damages may be considered in the amount-in-controversy calculation. <u>See</u> <u>Zehnder v. Ginsburg &</u> <u>Ginsburg Architects</u>, 172 Misc. 2d 57, 61, 656 N.Y.S.2d 135, 138 (N.Y. Sup. Ct. Westchester Cnty. 1997) ("Punitive damages are penal in nature but plaintiffs are not seeking such damages under a statute that creates the penalty and, therefore, the request for that relief does not bar class action certification." (internal citations omitted)); <u>see</u> <u>also</u> <u>Felder v. Foster</u>, 71 A.D.2d 71, 74, 421 N.Y.S.2d 469, 471 (4th Dept. 1979) ("[Section 901(b)] does not preclude a class action where plaintiffs seek punitive damages under section 1983 of title 42 of the United States Code, since such damages are not a 'penalty' or 'minimum measure of recovery created or imposed by statute' (internal citations omitted)). Accordingly, the Court may consider the amount claimed for punitive

damages in determining whether CAFA's jurisdictional amount requirement is met.

The parties do not debate whether Plaintiffs' $50 million demand represents an amount that Plaintiffs could legitimately recover in this action, and the Court therefore finds that Plaintiffs' punitive damages request satisfies the $5 million amount requirement. However, notwithstanding the punitive damages claim, it seems clear to the Court that Plaintiffs' additional claims for actual damages and equitable relief far exceed $5 million. Although they do not provide specific monetary demands, Plaintiffs assert a claim for actual damages to cover losses, out-of-pocket expenses, and "the burden and expense of comprehensive credit monitoring for more than one year into the future" and also seek equitable relief in the form of a fund to pay for credit monitoring and "the appointment of an administrator and an advisory panel of persons qualified and knowledgeable in the field of identity theft detection, prevention and mediation to oversee the fund so as to prevent any additional harm and remedy actual harm that has or will occur." (Compl. ¶¶ 8, 155, 240, 241.) Given the size of the purported class (which is alleged to be in the thousands) and the expansive nature of Plaintiffs' claimed damages, it hard to see how the amount-in-controversy does not exceed $5 million in actual damages and equitable relief even absent Plaintiffs' request for $50 million in punitive damages.

Accordingly, the Court finds that the amount-in-controversy requirement is met.

### 2. Class Size

As noted, CAFA also requires that there be at least 100 members in the proposed class. See 28 U.S.C. § 1332(d)(5)(B). Plaintiffs argue that Defendants have failed to meet their burden of showing that this requirement is met. However, the Complaint itself alleges that the proposed class amounts to "thousands, if not more" and also specifically alleges that one of the alleged security breaches underlying this action involved 500 patients. (Compl. ¶¶ 76, 155.) Accordingly, the Court finds that the class size requirement is met.

### 3. Minimal Diversity

Finally, CAFA requires only minimal diversity of the parties, i.e., where at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2). The Complaint alleges, and the parties do not dispute, that Defendants are New York, not-for-profit corporations. Defendants are therefore citizens of New York. See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated . . . ."). With respect to the named Plaintiffs, the Complaint only alleges that they are residents of New York; it makes no allegation with respect to their citizenship. Additionally, the Complaint does not limit

the proposed class to New York citizens. Nonetheless, Defendants claim that minimal diversity is evident from the face of the Complaint because of the sheer size of the proposed class. Given the size of the proposed class and the fact that it is not limited to New York citizens, the Court finds that Defendants have met their burden of showing that there is a reasonable probability that at least one class member is not a citizen of New York and thus is a "a citizen of a State different from . . . defendant." See Blockbuster, 472 F.2d at 59 (quoting 28 U.S.C. § 1332(d)(2)(A)).

Having found that the three CAFA prerequisites are met, the Court will now determine whether Plaintiffs have demonstrated that any of the CAFA exceptions apply.

B.    CAFA Exceptions

As noted, CAFA provides expanded, but not unlimited, diversity jurisdiction. There are enumerated exceptions to CAFA jurisdiction. In their motion to remand, Plaintiffs contend that even if the CAFA prerequisites are satisfied, three CAFA exceptions apply, which all depend in part on the citizenship of each member of the putative class: (1) the "local controversy" exception; (2) the "home state controversy" exception; and (3) the "interests of justice" exception. (Pls.' Br. at 13-20.) The local controversy and home state controversy exceptions are mandatory; if either applies, the Court must decline jurisdiction. 28 U.S.C.

§ 1332(d)(4) (stating that "[a] district court <u>shall</u> decline to exercise jurisdiction" if the local controversy or home state controversy exception apply (emphasis added)). These exceptions "are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." <u>Brook</u>, 2007 WL 2827808, at *3 (quoting <u>Hart v. FedEx Ground Package Sys. Inc.</u>, 457 F.3d 675, 682 (7th Cir. 2006)). The interests of justice exception is discretionary but it is also "designed to address similar concerns regarding truly 'local' controversies in cases where neither mandatory exception applies." <u>Sorrentino</u>, 588 F. Supp. 2d at 355.

Defendants argue that Plaintiffs' motion to remand based on the CAFA exceptions should be denied because (1) it is untimely; and (2) in any event, Plaintiffs have failed to establish that the Court should decline CAFA jurisdiction under one of the exceptions. (Defs.' Opp. Br. at 19-22.) As discussed below, the Court finds that Plaintiffs' motion to remand was timely and that expedited discovery regarding the citizenship of the class members is needed before the Court can decide whether any of the exceptions apply.

1.  Timeliness

Defendants argue that Plaintiffs' attempt to invoke the CAFA exceptions is untimely because Plaintiffs filed their motion to remand more than thirty days after this action was removed to

this Court.  Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ."  28 U.S.C. § 1447(c).  Because the CAFA exceptions do not deprive the Court of subject matter jurisdiction, Defendants contend, Plaintiffs' motion to remand, which was filed ninety-four days after Defendants' notice of removal, is untimely.  The Court disagrees.

Defendants are correct that the exceptions to CAFA jurisdiction are not jurisdictional.  As the Second Circuit recently explained in Gold v. New York Life Insurance Co., 730 F.3d 137 (2d Cir. 2013), because the home state controversy exception states that the Court "shall decline to exercise jurisdiction" under CAFA, the exception "inherently recognizes [that] the district court has subject matter jurisdiction but must actively decline to exercise it if the exception's requirements are met."  730 F.3d at 141 (alteration in original) (internal quotations marks and citation omitted).  However, in Gold, the Second Circuit also endorsed the Eight Circuit's holding in Graphic Communications v. CVS Caremark Corp., 636 F.3d 971, 973 (8th Cir. 2011) that remand motions based on CAFA need only be raised within a "reasonable time," not within the thirty-day deadline under 28 U.S.C. § 1447(c).  Gold, 730 F.3d at 142.

In Graphic Communications, the Eight Circuit found that Section 1447(c)'s thirty-day deadline did not apply to remand motions under CAFA because it did not consider the local controversy exception to be "any other defect other than subject matter jurisdiction" under Section 1447(c).  636 F.3d at 975. Instead, the Eight Circuit held that a motion to remand must be filed within a "reasonable" time period after removal.  In Gold, the Second Circuit considered the timeframe for filing a motion to dismiss under CAFA's home state exception.  In deciding this question, the Second Circuit relied heavily on the Eight Circuit's holding regarding the timeliness of remand motions, finding the Eight Circuit's approach to be "sound" and "similarly hold[ing] that motions to dismiss under CAFA's home state exception must also be made within a reasonable time."  Gold, 730 F.3d at 142. Thus, although the Second Circuit has not explicitly answered whether a remand motion under CAFA must be made within the thirty-day period under Section 1447(c) or within a reasonable time, the Second Circuit's express endorsement of, and reliance on, the Graphic Communications holding indicates that the law of this Circuit requires remand motions based on CAFA exceptions to be made within in a reasonable time.

Here, considering the facts of this case, Plaintiffs' motion to remand was made with a reasonable time.  See Gold, 730 F.3d at 142 ("[W]hat is reasonable will vary according to the

relevant facts . . . .").  Although Plaintiffs were aware that the CAFA exceptions might provide a basis for remand at the time Defendants removed this case, the Court is satisfied with Plaintiffs' counsel's representation that Plaintiffs did not possess sufficient evidence to support such a motion at that time. As discussed in more detail later, the local controversy, home state controversy, and interest of justice exceptions all depend on the citizenship of each putative class member.  For example, the home state controversy exception provides that a court must decline jurisdiction in cases where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  In light of these requirements, Plaintiffs' counsel engaged in interviews with prospective victims of identity theft for three months prior to filing the motion to remand and dedicated additional time to investigate criminal reports and findings in an attempt to garner enough evidence to support a motion to remand based on the CAFA exceptions.  (Pls.' Reply Br., Docket Entry 20, at 7-10.)  Given that much of the information regarding the citizenship of the purported class members rests exclusively with Defendants, the Court concludes that Plaintiffs could not in good faith attempt to make out a successful motion to remand based on the CAFA exceptions at the time this case was removed.

Additionally, the Court finds that the motion to remand was not made at an unreasonably late stage of this litigation. The case is still in its preliminary stages, the Court has not held an initial conference, and, with the exception of the pending motion to remand, the Court has not expended significant resources on this case. For all of these reasons, the Court finds that Plaintiffs motion to remand was timely.

### 2. Expedited Discovery

Having found the motion to remand to be timely, the Court will now explain why expedited discovery is required before determining the applicability of the CAFA exceptions. As noted above, Plaintiffs move for remand under the local controversy, home state controversy, and interests of justice exceptions. While each exception consists of different elements, they all require Plaintiffs to make a numerical showing regarding the citizenship of the putative class. The local controversy exception provides that a court must decline to exercise jurisdiction in cases where a plaintiff demonstrates, inter alia, that "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed . . . ."[1] 28 U.S.C. § 1332(d)(4)(A). Similarly,

---

[1] The full text of the exception provides that a district court "shall decline to exercise" its jurisdiction:

(i) over a class action in which—

the home state controversy exception requires a court to decline jurisdiction in cases where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The interests of justice exception provides that a

> district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under [CAFA] over a class action

---

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant—
>
>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>
>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>
>> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).

> in which greater than one-third but less than
> two-thirds of the members of all proposed
> plaintiff classes in the aggregate and the
> primary defendants are citizens of the State
> in which the action was originally filed based
> on consideration of [several factors] . . . .[2]

28 U.S.C. § 1332(d)(3).

The citizenship of Defendants is not in dispute here;

each of them is a citizen of New York.   However, the parties

---

[2] The factors are:

> (A) whether the claims asserted involve matters of national
> or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of
> the State in which the action was originally filed or by
> the laws of other States;
>
> (C) whether the class action has been pleaded in a manner
> that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a
> distinct nexus with the class members, the alleged harm, or
> the defendants;
>
> (E) whether the number of citizens of the State in which
> the action was originally filed in all proposed plaintiff
> classes in the aggregate is substantially larger than the
> number of citizens from any other State, and the
> citizenship of the other members of the proposed class is
> dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing
> of that class action, 1 or more other class actions
> asserting the same or similar claims on behalf of the same
> or other persons have been filed.

28 U.S.C. § 1332(d)(3).   "The plaintiff need not satisfy all
factors, rather a balancing test should be applied taking into
consideration the 'totality of the circumstances.'"   Sorrentino,
588 F. Supp. 2d at 359 (citation omitted).

heavily contest whether Plaintiffs have met their burden of showing that (1) two-thirds or more of the putative class members are citizens of New York, which would invoke the home state controversy exception and satisfy one element of the local controversy exception; or (2) one-third or more of the putative class members are citizens of New York, which would satisfy one element of the interests of justice exception.

Plaintiffs argue that they have met their burden of showing that more than two-thirds of the potential class members are citizens of New York because (1) all of the named Plaintiffs are citizens of New York; (2) thirty-four unnamed class members identified by Plaintiffs' counsel are New York citizens; (3) Defendants operate sixteen hospitals and eighteen medical centers exclusively in New York; and (4) a 2011 annual report published by Defendants states that ninety-one percent of their patients "originate" from within New York City and Long Island. (Pls.' Br. at 14-17.) This argument is extremely compelling, but based only on these New York connections, it does not necessarily follow that two-thirds, or even one-third, of the putative class is made up of New York citizens. The sample of the twelve named Plaintiffs and thirty-four unnamed plaintiffs is small and, even assuming that ninety-one percent of Defendants' patients originate from within New York, such statistic says nothing about the citizenship of those patients. It is probable that a portion of

these patients consist of individuals who reside in New York, but who are not domiciled in New York, and therefore are not New York citizens (e.g., an out-of-state college student). In sum, although compelling, Plaintiffs' argument is somewhat speculative and the Court concludes that it cannot remand this action based on the evidence before it. Plaintiffs' motion to remand is therefore DENIED, with leave to renew.

Recognizing the inadequacy of their evidence, Plaintiffs previously requested limited jurisdictional discovery in a pre-motion conference letter,[3] and Plaintiffs assert that discovery will show that two-thirds of the class are New York citizens, thus requiring remand under the home state exception. The Court finds that expedited discovery on the issue of class citizenship is appropriate and required here. As noted, the citizenship of the putative class members is unclear, but given the New York connections in this action, it seems likely that two-thirds of the putative class will consist of New York citizens. The Court is mindful that the Court has jurisdiction under CAFA, and thus, court-ordered discovery would not be jurisdictional in nature. However, CAFA does impose an obligation on this Court of mandatory abstention. Because Plaintiffs have made a substantial showing

---

[3] (See Docket Entry 8.) The undersigned does not require pre-motion conference letters, with the exception of motions for summary judgment. Plaintiffs' request for a pre-motion conference was therefore denied.

that more than two-thirds of the putative class are New York citizens and much of the information regarding the putative class is possessed by Defendants, the Court finds that the appropriate way to proceed here is with limited, expedited discovery on the issue of the CAFA exceptions. See Barricks v. Barnes-Jewish Hosp., No. 11-CV-1386, 2012 WL 1230750, at *2 (E.D. Mo. Apr. 12, 2012) (ordering discovery before considering applicability of local controversy exception); cf. Catron v. Colt Energy, Inc., No. 13-CV-4073, 2013 WL 6016231, at *3 (D. Kan. Nov. 13, 2013) (declining to order expedited discovery because, inter alia, "it . . . [did] not appear that the information [was] . . . as readily available as plaintiff assume[d]" and "plaintiff's initial evidence of the applicability of the local controversy exception . . . [was not] as strong as plaintiff contend[ed]).

The parties are therefore ORDERED to confer and submit a joint proposed discovery plan within thirty (30) days of this Memorandum and Order. The discovery plan shall not exceed ninety (90) days and shall include the types of discovery to be conducted. Because the parties will engage in expedited discovery that may require the Court to abstain from jurisdiction over this case, the Court RESERVES JUDGMENT on Defendants' pending motion to dismiss.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to remand is DENIED with leave to renew thirty (30) days after the conclusion

of expedited discovery regarding the CAFA exceptions.  The Court RESERVES JUDGMENT on Defendants' motion to dismiss.  The Clerk of the Court is directed to TERMINATE this motion and Defendants may refile the motion within thirty (30) days after the conclusion of expedited discovery.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    June __30__, 2014
          Central Islip, New York